THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FLOR T. DEL RIO LORANCA,
      Plaintiff,


      v.
                                   Civil No. 19-1660 (ADC)

AEROSTAR AIRPORT HOLDINGS, LLC
ET AL.,
      Defendants.

## OPINION AND ORDER

Before the Court are co-defendant, Aerostar Airport Holdings, LLC's ("Aerostar"), **ECF No. 77**, and co-defendants Agustín Arellano-Rodríguez ("Agustín Arellano") and María Román-Santos's ("María Román") motions for summary judgement, **ECF No. 80**.

For the reasons discussed herein, the motions for summary judgment at **ECF Nos. 77** and **80** are **GRANTED IN PART AND DENIED IN PART**.

I.    **Procedural Background**

Plaintiff filed a complaint alleging that Aerostar, her former employer, wrongfully terminated, retaliated, and discriminated against her in violation of several federal and state laws. ECF No. 1. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1), (2) and e-3(a) ("Title VII"); the Equal Pay Act, 29 U.S.C. § 206 ("EPA"); P.R. Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 et seq. ("Law 100"); P.R. Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194 et seq. ("Law 115"); PR Law No. 69 of July 6, 1985, P.R.

Laws Ann. tit. 29, § 1321 et seq. ("Law 69"); PR Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 §§ 155 et seq. ("Law 17"); PR Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185 et seq. ("Law 80"); and Articles 1802 and 1803 of Puerto Rico's Civil Code, PR Laws Ann. tit. 31 § 1451 ("Articles 1802 & 1803"). Moreover, plaintiff also asserts that co-defendants Agustín Arellano and María Román, in their individual capacities, discriminated and retaliated against her.

Aerostar moved for summary judgment. **ECF Nos. 77**, **77-1**, Statements of Uncontested Material Facts ("SUMF") **ECF Nos**. **77-2**. Individual co-defendants Agustín Arellano and María Román filed a motion for summary judgment, **ECF No. 80, 80-1, 80-3,** and joined Aerostar's motion for summary judgment and SUMF. Due to COVID-19 pandemic and several controversies related to requests for out-of-jurisdiction depositions, the discovery of the case was pushed back. Accordingly, and in abundance of caution, the Court granted plaintiff sufficient time to conclude discovery and respond to defendants' motions for summary judgment. **ECF No. 122**. Plaintiff filed an omnibus opposition to defendants' motions for summary judgment, **ECF No. 128, 129**; and a response statement of facts and additional statements ("RSFA"). Defendants replied. **ECF Nos. 134, 139**. Plaintiff sur-replied. **ECF No. 143-1**.

## II.     Plaintiff's Failure to Comply with the District Court's Local Rules

Under Local Rule 56(c):

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the

motion for summary judgment… Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule. (Emphasis added).

In her response, plaintiff faults defendants with failing to comply with Fed. R. Civ. P. 56 and Loc. Civ. R. 56. **ECF No. 129** at 2. While defendants' SUMF and motions for summary judgment are not without blemish,[1] plaintiff's violations of Loc. Civ. R. 56 are egregious and will not go unnoticed by the Court. *See Acevedo-Padilla v. Novartis EX Lax, Inc.*, 740 Supp. 2d 293 (D.P.R. 2010) rev'd and remanded on other grounds, 696 F.3d 128 (1st Cir. 2012).

First, the Court notes that plaintiff's RSFA at **ECF No. 128** is almost twice the length of defendant's SUMF at **ECF No. 77-2**. As noted in *Domínguez-Rubio v. Hewlett Packard Caribe BV, LLC*, the reason for such an unreasonable extension "is quite simple[,] plaintiffs' opposing statement fails to comply with this Court's Local Rules." *Id*., 13-1139 (ADC), 2015 WL 1538284, at *1 (D.P.R. Mar. 31, 2015). Likewise, most of plaintiff's RSFAs are far from short and concise. As a matter of fact, some of plaintiff's RSFAs occupy a whole page while others extend for several pages.

Second, the Court notes that some of plaintiff's "qualifications" and "denials" simply question ancillary aspects of the proposed SUMF. For example, SUMF number 12 simply states that plaintiff reported directly to the Chief Commercial Officer "who is, and at all relevant times

---

[1] Indeed, some of their SUMFs contain references to documents that are not what defendants' purport they are.

has been, Manuel Gutiérrez." **ECF No. 77-2** at 3. Plaintiff "denied" the proposed statement by stating that, because Manuel Gutiérrez began working for Aerostar a couple of months after plaintiff, he "could not have supervised her 'at all times.'" **ECF No. 128** at 4. Clearly, Aerostar's SUMF included a qualifier omitted by plaintiff, to wit, the statement was limited to "at all relevant times." The same goes for plaintiff's qualifications. Plaintiff "qualified" Aerostar's SUMF number 17 by stating that during Manuel Gutiérrez's absence, she "performed the functions that corresponded to him." **ECF No. 128** at 5. Notwithstanding, Aerostar's SUMF number 17 had nothing to do with plaintiff's work or performance. Instead, SUMF number 17 states that Manuel Gutiérrez "often travels and is not physically present for the day-to-day management of the Commercial Department." **ECF No. 77-2** at 5. The list goes on.

Third, the Court also notes that plaintiff cherry-picked fragments of defendant's SUMFs to fabricate grounds to deny the statement while ignoring the rest of the proposed statement. Take Aerostar's SUMF number 33 for example. Citing plaintiff's deposition transcript pages "117-119," defendant stated that plaintiff did not have the power to grant or cancel contracts. On the other hand, citing pages "118-119" of her deposition, plaintiff denies the proposed statement and counters she was only precluded from cancelling contracts. Notably, plaintiff turned a blind eye to page "117" of the transcript of her deposition where she also admitted not being able to execute contracts. Similarly, the Court also highlights plaintiff's RSFA number 32, wherein plaintiff denies defendant's SUMF only because defendant used the word "thus."

Fourth, plaintiff's response and sur-reply are filled with incorrect citations to the record, which forced the Court to "ferret" through thousands of pages of exhibits in order to make sense of plaintiff's proposed statements of facts. Finally, the Court cannot overlook the fact that plaintiff raised many objections without any grounds. For example, plaintiff raised "hearsay" and "anti-ferret" objections to a substantial number of SUMFs without explaining why.

If a party improperly controverts the facts, the court may treat those facts as uncontroverted. *Natal Pérez v. Oriental Bank & Tr.*, 291 F.Supp.3d 215, 219 (D.P.R. 2018). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do so "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007), *Puerto Rico American Ins. Co. v. Rivera–Vázquez*, 603 F.3d 125, 131 (1st Cir. 2010).

Notwithstanding the fact that plaintiff failed to comply with this Court's rules in many of her RSFAs, as discussed herein, the Court finds that genuine disputes of the material facts in this case foreclose summary judgment disposition as to certain claims.

## III.    Factual Background

### A. Plaintiff's employment with Aerostar

Plaintiff, an American citizen who lived most of her life in Mexico, moved to Puerto Rico and began to work for Aerostar[2] as "Concessions Manager" on Mar 7, 2013. **ECF No. 128** at 2-3; **ECF No. 77-2** at 2-3. Before transitioning to Aerostar, plaintiff worked for "Grupo Aeroportuario del Sureste, S.A.B. de C.V." ("ASUR"), a Mexican entity that owns 60% of Aerostar. *See* **ECF No. 1**

---

[2] Aerostar is the operator of the Luis Muñoz Marín International Airport in Carolina, Puerto Rico.

at 4. Plaintiff's initial compensation "package" in Aerostar included a base gross salary of $90,000.00, an annual living allowance of $21,600.00, and a discretionary bonus of 12% of her annual base salary. Every year plaintiff's salary increased (ranging from 2% to 4.6%). Effective March 1, 2018, plaintiff's base salary was $101,875.97 "in addition to" the other compensation described above. Co-defendant Agustín Arellano was Aerostar's Chief Executive Officer and was a member of the Board of Directors of both Aerostar and ASUR. Co-defendant María Román was Aerostar's Human Resources Director, at all relevant times. **ECF No. 1**.

As "Concessions Manager," plaintiff reported directly to the "Chief Commercial Officer," Manuel Gutiérrez. **ECF No. 128** at 4-5; **ECF No. 77-2** at 3-5. Chief Commercial Officer is the highest position in Aerostar's Commercial Department. *Id.; Id*. Manuel Gutiérrez traveled often, reason for which plaintiff executed some of his duties and responsibilities. Thus, Aerostar decided to "change plaintiff's position from 'Concessions Manager' to 'Commercial Manager.'" *Id.; Id*. Aerostar's organizational chart was amended to reflect that change and, as such, plaintiff ranked higher than the other three managers of the department. **ECF No. 77-2** at 5-6; **ECF No. 128** at 6-8. Even though plaintiff "performed some of Manuel Gutiérrez's management duties in his absence, she did it with [his] knowledge, consent, approval and direction." **ECF No. 77-2** at 7; **ECF No. 128** at 8.

### B. Work related incidents

One of the employees of the Commercial Department returned her company-owned cellphone to human resources when she resigned in 2014. Plaintiff and María Román accessed

and read a "Whatsapp" chat between employees of the Commercial Department. The employees made jokes and derogatory comments about plaintiff. Plaintiff felt discriminated against because of the way she talked, her national origins, and the way she dressed. **ECF No. 92-1** at 141. Within the chat, reference was made to a meeting in which the chat participants informed Aerostar's human resources personnel that plaintiff was difficult to work with, offensive, and disrespectful to them. **ECF No. 77-2** at 10; **ECF No. 128** at 13. Plaintiff met with the members of the chat. She expressed how hurtful the comments were especially because, in her opinion, she "protected them" and they were supposed to be a "team."[3] **ECF No. 92-1** at 140-142.

On June 25, 2018, Aerostar's Parking and Car Rental Manager, Agustín González-Castellón, was asked by María Román to provide details of the events that transpired in the hiring process of a so-called Parking Team Leader. In essence, Agustín González-Castellón relayed that he was pressured by both plaintiff and María Román during the hiring process. **ECF No. 98-4** at 1-3.[4]

Based on that statement, María Román launched an investigation into plaintiff's conduct as a manager. During the investigation, María Román heard that employees had complained

---

[3] Due to plaintiff's comments, some of the chat participants testified under penalty of perjury that they felt plaintiff was close with María Román,Human Resources Director; in the sense that plaintiff would be immune from action by the Human Resources Department.

[4] Even though Aerostar underscores an alleged assault committed by plaintiff, Agustín González-Castellón simply stated "[w]hile I'm at the door frame, Flor pushes me toward the office's interior." **ECF No. 98-4**. The Court cannot find any other reference from the alleged victim stating anything else aside from his reference to a "push." Agustín González-Castellón's employment at Aerostar was terminated in 2018. He filed a charge with the EEOC. **ECF No. 98-8**. Although he claims plaintiff discriminate against him, he did not claim any "push" or physical assault. *Id.*

about plaintiff's derogatory remarks against Puerto Ricans, humiliation, physically touching them, and making improper remarks about sexual orientation as well as other work related, unwelcome conduct. **ECF No. 77-2** at 11-13; **ECF No. 128** at 14-15. "As requested by" María Román, Aerostar's Financial Commercial Manager, Leonard Crews, also drafted a complaint against plaintiff because he sensed a "lack of sensibility towards Puerto Rican culture" and because plaintiff would reject ideas from the employees to create "distance between" Manuel Gutiérrez and the rest of the Commercial Department. **ECF No. 98-5**.

On June 27, 2018, Manuel Gutiérrez issued a conduct memorandum against plaintiff. **ECF No. 92-5** at 1; **ECF No. 77-13** at 4.[5] Manuel Gutiérrez asked plaintiff to draft the memorandum herself. **ECF No. 92-1** at 171.

On November 1, 2018, yet another employee complained about plaintiff's conduct. Crystal Afanador-Vázquez, Commercial Assistant of Aerostar's Commercial Department, complained that plaintiff made her feel "dumb," and had the tendency of "touching [her] forehead with her index finger, as well as patting my head." **ECF No. 98-9**.[6] She also mentioned other conduct that made employees generally uncomfortable such as placing bets on the number of travelers that visited the airport and Mexican traditions that included paying lunch for others. **ECF No. 77-2** at 17; **ECF No. 98-9**.

---

[5] Plaintiff denies this fact while citing to a document that has no relation to the issue. *See* **ECF No. 128** at 20 citing Ex. XIV which apparently contains information of plaintiff's job description.
[6] In essence, during her deposition, plaintiff denied most of the allegations against her.

### C. First investigation by external counsel and plaintiff's internal complaint

Aerostar retained external counsel to investigate plaintiff's conduct. On November 14, 2018, Attorney Yldefonso López-Morales ("Attorney López"), issued a report that reflected poorly on plaintiff's conduct. **ECF No. 98-11** at 5. Attorney López interviewed some of the employees of the Commercial Department but did not interview plaintiff.

On November 20, 2018, plaintiff filed an internal complaint against Agustín Arellano and María Román alleging sexual harassment,[7] failure to promote, and other offensive conduct and comments against her.[8] **ECF No. 92-6**; **ECF No. 128** at 37. Plaintiff filed her complaint with Aerostar and ASUR. Plaintiff's internal complaint triggered an investigation by Aerostar and an independent investigation by ASUR.

### D. Second investigation by external counsel and plaintiff's employment termination

Aerostar retained external counsel, Attorney Briseida Torres-Reyes ("Attorney Torres"), to investigate plaintiff's claims and to file a report. **ECF No. 77-2** at 20-23, **ECF No. 128** at 40-43. The report concluded that plaintiff's conduct was not appropriate and that plaintiff did not have a sexual harassment claim against Agustín Arellano.

Adolfo Castro, ASUR's Chief Executive Officer and member of Aerostar's Board of Directors, informed Agustín Arellano that plaintiff had sent copy of her complaint to ASUR and

---

[7] Plaintiff explained during her deposition that she did not know the legal concepts and that instead of sexual harassment, she meant being "harassed because of her sex." **ECF No. 92-11** at 242.

[8] Plaintiff also sent copy of her complaint to ASUR, which triggered an independent investigation by ASUR as parent company of Aerostar. **ECF No. 128** at 39. ASUR personnel performed a polygraph on plaintiff which lasted approximately 13 hours. Aerostar was not made aware of this action or the results that it yielded.

instructed him not to take any adverse employment action against plaintiff until ASUR's

investigation concluded.[9]

However, on December 19, 2018, without Aerostar's Board of Director's consent and

against ASUR's instructions, Agustín Arellano decided to terminate plaintiff's employment.

**ECF No. 77-2** at 26-27. On December 20, 2018, plaintiff filed a charge with the EEOC and was

later notified of her dismissal. **ECF No. 77-2** at 27-28. Accordingly, plaintiff amended her EEOC

charge to include retaliation.

Both María Román and Agustín Arellano were fired from Aerostar. Agustín Arellano's

employment with ASUR was also terminated. They both filed EEOC charges against his former

employer. **ECF No. 134-1** at 214.

## IV.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material

fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. United*

*States Dept. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004); *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 83

(1st Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 56(a). Although the Court states the facts in

the light most favorable to the party against whom summary judgment is entered, the Court is

---

[9] Among other things, ASUR conducted a 13-hour polygraph test on plaintiff. The Court does not rely on any findings related to such test.

still required "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted).

In order to defeat a properly supported motion for summary judgment, the non-moving party must set forth facts showing that there is a genuine dispute for trial. *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011). "When a non-moving party fails to file a timely opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." *Pérez-Cordero v. Wal-Mart Puerto Rico*, 440 F.3d 531, 533–34 (1st Cir. 2006) (citing *NEPSK, Inc. v. Houlton*, 283 F.3d 1, 7–8 (1st Cir. 2002)). The Court must still scrutinize the summary judgment motion under the terms of the Federal Rules of Civil Procedure but, "[i]n most cases, a party's failure to oppose summary judgment is fatal to its case." *Id.* at 534.

L. Civ. R. 56(c) states, in pertinent part, "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts." *Id.* As discussed herein, plaintiffs' opposing statements are replete with supplemental information in clear violation of applicable rules. *See Tropigas de P.R.*, 637 F.3d at 57 ("Local Rule 56 is in service to Federal Rule of Civil Procedure 56.").

Moreover, L. Civ. R. 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be

deemed admitted unless properly controverted. . . The [C]ourt shall have no independent duty

to search or consider any part of the record not specifically referenced by the parties' separate

statement of facts."

## V.      Discussion[10]

### A.      Aerostar's motion for summary judgment

#### (i)      Sex discrimination based on plaintiff's employment termination

"Title VII of the Civil Rights Act of 1964 forbids a covered employer from

'discriminat[ing] against any individual with respect to his [or her] compensation, terms,

conditions, or privileges of employment, because of such individual's ... sex.'" *Burns v. Johnson*,

829 F.3d 1, 8 (1st Cir. 2016) (citing 42 U.S.C. § 2000e–2(a)(1)).

Defendants contend that "[plaintiff] lacks direct evidence of discrimination." **ECF No. 77-**

**1** at 8. Accordingly, defendants openly assert that the *McDonnell Douglas Co. v. Green*, 411 U.S.

792, 802-805 (1973), burden-shifting framework comes into play. Under this frame-work,

defendants assert plaintiff fails to establish a prima facie case of sex discrimination. Conceding

that plaintiff falls within a Title VII protected class, was terminated (adverse action), and that a

"man continued to perform her duties," defendants purport plaintiff is unable to demonstrate

that she fulfilled the employer's expectations because of all the misconduct she displayed to

---

[10] Aside from those specifically identified herein, the Court draws the facts detailed herein from the well-pleaded facts and the SUMF submitted by the parties that comply with Local Rule 56. *See CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). Although the court reviewed every statement submitted by the parties, it will only consider and include in this Opinion and Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

other employees. Defendants claims that even if plaintiff were able to make a *prima facie* showing, the employer's grounds for employment termination are legitimate and non-discriminatory. To wit, they allege that her termination was based on two independent reports by external counsel. **ECF No. 77-1** 10-11.

Plaintiff responds that this is one of the rare cases where a plaintiff adduces direct evidence. Thus, plaintiff argues that there is no need for the *McDonnell Douglas* burden-shifting scheme. Indeed, since 1989, the Supreme Court has set forth a "model of analysis" for employment discrimination cases when the employee presented direct evidence. *See Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 64 (1st Cir. 2002) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 270-78 (1989) (O'Connor, J., concurring)). An "inferential" model requiring a *prima facie* showing, on the other hand, was established for cases of circumstantial evidence. *Id*.

According to plaintiff's deposition testimony, in 2016 Agustín Arellano was having problems with a manager named Víctor Meléndez. Around that time, plaintiff asked Agustín Arellano to be appointed as director. According to plaintiff, Agustín Arellano asked her to fire Víctor Meléndez and, in return, he would reward her with the director position. **ECF No. 92-1** at 253. Plaintiff refused. Agustín Arellano reacted by telling plaintiff "You are no use to me. You are never going to be director. You don't have the character, you're a woman." *Id*.[11] According to plaintiff, Agustín Arellano, Aerostar's in-house counsel, and other high-ranking officials at

---

[11] For ease of reference, the Court will generally refer to this comment as the "2016 comment."

Aerostar[12] continuously made jokes and demeaning comments related to her sex such as "you are no good to me," "maid," and *pendeja.*"[13] These comments were made in the context of plaintiff's work performance, particularly in connection with her duties as manager under Manuel Gutiérrez for which she was called "Gutiérrez's maid."[14]

Because defendants filed their motion for summary judgment under the impression that the *McDonnell Douglas* framework was appropriate, they argued that even if plaintiff made a *prima facie* showing of discrimination, Aerostar had "legitimate and non-discriminatory" grounds to dismiss plaintiff. **ECF No. 77-1** at 11. However, plaintiff's direct evidence "imposes on the employer the burdens of production and persuasion, unlike the *McDonnell Douglas* model, which merely shifts to the employer the burden of producing admissible evidence to support a non-discriminatory reason for its actions." *Weston-Smith*, 282 F.3d at 65 (citing *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir. 1996)). As the First Circuit has stated, although not impossible, "it is more difficult… for the employer to get summary judgment in light of the strength of direct evidence and the potential shifting of burdens." *Id.*, (citing *Domínguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 429 (1st Cir. 2000)).

---

[12] According to plaintiff's testimony during her deposition. **ECF No. 92-1** at 261, 288.
[13] Which in Puerto Rico could be deemed as an insult to a woman.
[14] At her deposition, plaintiff alluded to being "… targeted by Ms. Román's workplace harassment, by the sexual harassment by engineer [Agustín Arellano]…" Plaintiff also testified she was told by Agustín Arellano "ÿou are a woman, you are no good to me. You are no good to me. You are an asshole [*pendeja*]. You're no good for anything. You are a Dominican maid.'" **ECF No. 92-1** at 261. According to plaintiff, Agustín Arellano also referred to her as Manuel Gutierrez's maid. *Id.* Because she was consistently and constantly mocked, plaintiff asserts that an environment of disrespect was generated and that it was demeaning.

Via reply, defendants contend plaintiff's purported direct evidence is not as direct as plaintiff believes. Aerostar raises two arguments to persuade the Court that plaintiff's case does not hinge on true direct evidence. First, that the inappropriate comments were uttered years before plaintiff's dismissal. Second, referring to the 2016 comment, Aerostar posits it was not related to plaintiff's employment termination, *per se.* **ECF No. 134** at 7-8.

While it is true that the comment "you will never be a director, you are a woman" was made in 2016, which would ordinarily disqualify it from the "direct evidence" league,[15] plaintiff testified during her deposition that "several times [Agustín] Arellano threatened to terminate me," with comments such as "[t]he thread breaks on the thinnest part and Manuel's thinnest side is you. I am going to kick you out." **ECF No. 92-1** at 276-277. Plaintiff also mentioned during her deposition that Agustín Arellano "constantly" made jokes against her for being a woman and insulted her. *Id.*, at 255. Agustín Arellano would also gather other Aerostar officials to make "comments that were… humiliating for me as a woman… they spoke in a very vulgar way. You could say that the environment among them was very-- it made a woman feel like an object, very demeaning as a woman." *Id.*, at 255.[16]

Moreover, plaintiff testified during her deposition that Agustín Arellano using his authority as CEO, allegedly gave instructions to María Román, Human Resources Director, to find reasons to "terminate" plaintiff's employment. *Id.*, at 277. Among other examples, plaintiff

---

[15] *See Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 36 (1st Cir. 2001)(remoteness may affect probative value of comments from decisionmaker).

[16] Plaintiff added, "It was not one day, it was not one week, it was months." **ECF No. 92-1** at 204.

testified that Agustín Arellano instructed the Director of Human Resources to harass plaintiff and others within the Commercial Department. *Id*. Pursuant to plaintiff's deposition, María Román harassed her and created a "hostile environment" by inciting other employees to complain about plaintiff and file formal complaints against her. *Id*., at 274-275. María Román also conducted investigations into plaintiff's conduct and performance, which resulted in the hiring of external counsel to conduct independent probes.

Thus, contrary to Aerostar's arguments, plaintiff offered testimony in her deposition amounting to direct evidence of discrimination that extends well beyond Agustín Arellano's comment in 2016.[17] Finally, even though the 2016 comment did not threaten her with termination of employment, there were other instances in which Agustín Arellano indeed made the threat of firing her.

Direct evidence "is evidence which, in and of itself, shows a discriminatory animus." *Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir. 1990). Not one but several comments from Aerostar's decision maker, Agustín Arellano, are full of explicit negative animus against plaintiff because of her sex. In light of the direct evidence available in this case, summary judgment is not proper to dispose of plaintiff's claims of discrimination based on her sex. "When a plaintiff provides direct evidence of discrimination, the issue may be put to a finder of fact without further ado." *Álvarez-Fonseca v. Pepsi Cola Bottling Co.*, 152 F.3d 17, 24 (1st Cir. 1998).

---

[17] For purposes of a direct-evidence inquiry, there is no question about Agustín Arellano's decision-making power. As matter of fact, defendants do not raise any objections in this regard. *See Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000)(considering "statements by a decisionmaker that directly reflect the alleged animus.").

Clearly, here, "a reasonable jury could construe this evidence as an admission by the decision-making [CEO] that it decided to terminate [plaintiff]'s employment because" she was a woman. *Zampierollo-Rheinfeldt v. Ingersoll-Rand De P.R., Inc.*, 999 F.3d 37, 52 (1st Cir. 2021). In this Court's view, the reports submitted by external counsel and the employee's complaints, legitimate as they might turn out to be,[18] "are not enough, in light of the direct evidence… to take the issue away from a jury." *Id.*, at 57.

### (ii)    Failure-to-promote under Title VII

Generally, "failure-to-promote claims rest on the premise that [the employer] treated women in general (and the [plaintiff] in particular) differently than men. The core inquiry in such disparate treatment cases is whether the defendant intentionally discriminated against the plaintiff because of her gender." *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71 (1st Cir. 2004)(citing *Cumpiano v. Banco Santander*, 902 F.2d 148, 153 (1st Cir. 1990)).

In its motion for summary judgment, Aerostar posits that summary judgment is proper since "[plaintiff] fails to make a *prima facie* case of discrimination for failure to promote because the Director position… never existed." **ECF No. 77-1** at 18. In the alternative, Aerostar asserts, the decision not to create the Director position was based on legitimate, non-discriminatory reasons, to wit, lack of need from an operational or business standpoint. In support, Aerostar posits "there was a Chief Commercial Officer… whose duties and responsibilities were that of a

---

[18] During her deposition, plaintiff denied most of the employee's allegations against her, which were memorialized in the complaints and the reports issued by external counsel.

Director… responsible for supervising the entire Commercial Department." *Id.*, 19. Aerostar adds, in the unlikely event that plaintiff establishes a "*prima facie* case of discrimination for failure-to-promote… the record shows that Aerostar had non-discriminatory reasons for refusing to create" the director position. *Id.*, at 20.[19] In its reply, Aerostar only recognizes (without conceding) as direct evidence Agustín Arellano's 2016 comment. **ECF No. 134**. Aerostar argues, as it did against plaintiff's sex-based employment termination claims, that it is too remote to show animus or causal connection. *Id*.

However, aside from the 2016 comment, the record reveals several other instances in which plaintiff was not promoted because of her sex or, at least, events that create genuine dispute over the fact that the animus and negative comments continued throughout her tenure. Indeed, plaintiff testified during her deposition that she asked Agustín Arellano for the director position "[s]everal times." **ECF No. 92-1** at 266. Aerostar's counsel asked plaintiff during her deposition "**on other occasions**, what was [Agustín Arellano's] answer?" *Id*. (Emphasis added). Plaintiff explained the answer was always "no." *Id*. She also testified, "**[r]epeatedly**, I asked him **on more occasions for the appointment**. I also discussed it with [María] Román." *Id.*, at 267 (emphasis added). Although plaintiff was not able to remember exactly the dates or details, she testified that Agustín Arellano's answers "were always offensive." *Id*. Therefore, there is direct evidence related to a failure-to-promote claim based on plaintiff's sex outside the 2016 comment.

---

[19] Via reply, **ECF No. 134**, Aerostar raised an untimely time-bar argument. However, in the context of Title VII claims, this defense is waivable. *See Nieves-Garay v. P.R. Police Dep't*, 2011 U.S. Dist. LEXIS 67671, *14, n.2, ("failure to exhaust administrative remedies nor timeliness implicate our subject matter jurisdiction.").

Moreover, as to what is a "director"[20] within Aerostar's business model, Agustín Arellano stated during his deposition that a "director, contrary to a manager… is the boss of all the managers." **ECF No. 98-1** at 6.[21] Definition that, in the summary judgment context, is met by plaintiff as corroborated by Manuel Gutierrez's and María Román's deposition testimony. For example, according to Manuel Gutiérrez (the highest-ranking officer in plaintiff's department and plaintiff's direct superior), plaintiff was a manager who "imparted instructions and oversaw other managers." **ECF No. 77-2** at 5. From a human resources standpoint, María Román testified that plaintiff was placed on a "higher hierarchical level than the three (3) other managers in the department." *Id*. In addition, Agustín Arellano had previously offered the director position to plaintiff via the 2016 comment. Thus, even though there was no formal position labeled "director," genuine dispute exists as to whether, for all purposes and intent, plaintiff was appointed and expected to act as one and, thus, whether the position existed or not.

Finally, Aerostar also contends that Agustín Arellano could not create the director position for plaintiff, thus, the argument goes, Aerostar could not have discriminated against her for failing to promote her. **ECF No. 134** at 14-15. However, with or without the power to do so, Agustín Arellano did in fact offer plaintiff the director position. Agustín Arellano also admitted during his deposition that usually "I would make the decision of bringing the proposal

---

[20] **ECF No. 134** at 14-15.

[21] *See, inter alia,* Agustín Arellano's deposition testimony: "Q- In other words, the managers would be underneath the Director in the organizational structure, correct? A- Correct." **ECF No. 98-1** at 6.

to the Board… the candidate that I thought was the most adequate." **ECF No. 98-1** at 11. Furthermore, Agustín Arellano firmly believes he had the authority to terminate plaintiff's employment without consent of Aerostar's Board of Directors and against the instruction from Aerostar's parent company, ASUR—for which Agustín Arellano served as a member of the Board of Directors. **ECF No. 98-1** at 17.

Consequently, even if he did not have the power to instantly create the position, Agustín Arellano played a key role in the process. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000)(holding that, at least for purposes of the burden-shifting scheme, a plaintiff "can establish… pretext for discrimination in a number of ways. One method is to show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker"). Therefore, even if these comments were not direct evidence, there is a genuine dispute as to this material fact, which bars summary judgment.

> **(iii)    Retaliation**

Aerostar moved for summary judgment dismissing plaintiff's Title VII retaliation claims. **ECF No. 77 -1** at 20-23. Conceding that plaintiff did participate in a protected activity (filing the November 20, 2018, internal complaint against Agustín Arellano and María Román) Aerostar contends plaintiff failed to establish causal connection because "a lapse of one (1) month between the protected activity and the adverse employment action alleged, standing alone, is insufficient." *Id*. In Aerostar's reply, the argument is made that besides the causation issue, Agustín Arellano relied on two good faith reports in making his determination to terminate

plaintiff's employment. Specifically, Aerostar posits "the fact that Adolfo Castro instructed Agustín Arellano not to terminate plaintiff until ASUR's investigation… concluded is wholly irrelevant… [because it] does not alter the undisputed fact as to what was Agustín Arellano's state of mind when he made the decision to terminate plaintiff, which is the ultimate material fact in this case." **ECF No. 134** at 20 (emphasis added).

Now, unlike plaintiff's discrimination claims, there is no direct evidence of retaliation. However, for the reasons explained in the preceding paragraphs, plaintiff has met her burden of making a *prima facie* case of Title VII retaliation by showing "(1)… protected conduct under Title VII; (2)… an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action." *Gu v. Bos. Police Dep't*, 312 F.3d 6 (1st Cir. 2002).[22] Notably, Aerostar only challenges the third factor (causal connection) based on "remoteness."

However, First Circuit caselaw negates Aerostar's main argument, which simply purports that a one-month gap is far too remote for a court to find causal connection based on temporal proximity. Binding First Circuit caselaw (unlike the 8th Circuit cases cited by Aerostar in its reply),[23] establishes that, under certain circumstances, a 3 month-gap[24] between the protected activity and the adverse employment action is "close enough to suggest causation."

---

[22] Defendants conceded that plaintiff met other two factors: a protected activity and an adverse employment action.
[23] **ECF No. 134** at 19 (citing *Scroggins v. Univ. of Minn.*, 221 F.3d 1042 (8th Cir. 2000)).
[24] *See Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 15 ("Sánchez filed his EEOC complaint in February of 2007 and was disciplined in May of 2007.").

*Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012). The *Sánchez-Rodríguez* Court held that the party "satisfied the 'causal connection' prong of his *prima facie* case. 'Very close' temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection." *Id*. (citing *Calero-Cerezo*, 355 F.3d at 25 (1st Cir. 2004)).

Since plaintiff met all three factors for a *prima facie* case, the burden shifts to Aerostar to show that there was a non-discriminatory reason for the adverse employment action. *See Douglas v. J.C. Penney Co., Inc.*, 474 F.3d 10, 14 (1st Cir. 2007). If Aerostar is able to shoulder that load, "the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination." *Sánchez-Rodríguez*, 673 F.3d at 13-14.

Aerostar's charges ahead claiming that "[Agustín] Arellano… terminate[d] [plaintiff] based on the findings and conclusions" of two reports which, in its opinion, show non-discriminatory justifications. **ECF No. 77-1** at 11. However, the Court is not convinced defendants cleared the genuine-dispute hurdle. According to Agustín Arellano's deposition testimony, it would seem as if it were the findings of the second report alone that resulted in plaintiff's employment termination. **ECF No. 98-1** at 13. This "second investigation," was "**strictly related** to [the] [internal] complaint presented by [plaintiff]." *Id*., at 14 (emphasis added). He added, "December 19, 2018… was the day it was decided [to terminate plaintiff's employment], after a second investigation." *Id*. Agustín Arellano was asked point blank:

Q- And what were the reasons for Mrs. Del Río's termination?

A- The magnitude of the facts reported. First, by the same... the same individuals from the commercial area at first.[25] Afterward, the falseness, **as it ended up being established after the second investigation**, the falseness in terms of the statement made against the [him] for sexual harassment, [26] which, in the investigation itself, Mrs. Del Río herself acknowledged it was not like that. Therefore, given the gravity of those two results and the level of responsibility or liability that this entailed for the company, I made the decision to terminate her. **ECF No. 98-1** at 16 (emphasis added).

Coincidently, it was Agustín Arellano who ordered the second investigation after about learning the content of plaintiff's internal complaint. *Id.*

Moreover, plaintiff contends that the Court should take into consideration the fact that while Aerostar's second investigation was taking place, its parent company, ASUR, was conducting an investigation of its own into plaintiff's allegations and instructed Agustín Arellano not to terminate plaintiff's employment until its conclusion. In its reply, Aerostar doubles down by stating that Adolfo Castro's instruction to Agustín Arellano not to terminate plaintiff's employment is not relevant because it does not "alter the undisputed fact as to what was Agustín Arellano's state of mind when he made the decision to terminate plaintiff, which is the ultimate material fact in this case." *Id.*, at 20.

---

[25] The second investigation included interviews of several employees working under plaintiff in Aerostar's Commercial Department. According to Aerostar's SUMF number 104 "Román, Arellano, Gutiérrez and several of plaintiff's subordinates, namely, Crews, Afanador, Arzuaga and Ibarreta." **ECF No. 77-2** at 21. Therefore, viewing this evidence in the light most favorable to the non-movant, the Court can infer that Agustín Arellano is making reference to the second investigation.

[26] As discussed before, plaintiff testified during her deposition that she had clarified during Aerostar's investigation (conducted by external counsel) that when she complained of "sexual harassment by Arellano" what she meant with "sexual harassment" was that Agustín Arellano harassed her because of her sex. Plaintiff also testified during her deposition that she did not know the correct legal term.

As a threshold matter, however, "courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." *Santiago-Ramos*, 217 F.3d at 54 (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998)). Regardless of potential issues with mental impressions in a summary judgment context, the Court notes that Aerostar's reply only made reference to SUMF number 101 in support of this argument. Aerostar's SUMF number 101 states that after receiving plaintiff's November 20, 2018, internal complaint, Agustín Arellano halted all "actions/conversations related to any possible disciplinary measures to be taken against plaintiff." **ECF No. 77-2** at 21. However, there is a discrepancy between the evidence Aerostar cited in support of SUMF number 101. On one hand, Agustín Arellano's sworn statement (**ECF No. 77-18** at 3) declares that, once he learned of the content of plaintiff's internal complaint, he stopped considering any possible disciplinary measures against plaintiff based on the findings of the first investigation conducted by external counsel, Attorney López. On the other hand, in his deposition testimony (as cited by Aerostar, **ECF No. 98-1** at 103) he makes no mention whatsoever of a disciplinary proceeding against plaintiff at the time plaintiff filed her internal complaint on November 20, 2018.

Moreover, SUMF number 101 also cited Aerostar's in-house counsel's deposition in support. However, José Vissepó-Muñoz's deposition testimony is also silent as to a pending or ongoing disciplinary proceeding against plaintiff at the time she logged her internal complaint. **ECF No. 98-12** at 4. Indeed, when asked about his reaction to plaintiff's internal complaint, José

Vissepó-Muñoz testified that he immediately approached Agustín Arellano. They discussed the

following:

> A- …how it was going to be processed. He told me, "Well, this has to be investigated," and I said, "Yes, this has to be investigated." I agreed with what he said and said, "Well, it can't"… and I told him, "Well, it can't be María Román, as is usually the case," and this was the first labor investigation at Aerostar, and he told me, "Well, you have to identify… right, you have to investigate it." And I was like, "Yes, well, I can investigate it. I don't have any problems." He told me, "Well, you have broad discretion and you decide how you want to investigate it." And I was like, "Okay," and that's how I did it.
>
> Q- Okay. And what instructions did Mr. Arellano give you, then?
>
> A-The one I just said, to investigate it and that I had broad discretion to do it.
>
> Q- "Broad discretion" meaning what?
>
> A- That he was not going to interfere with the decisions I made with regard to that investigation, because he was also involved in the investigation. And those were my recommendations, and I also agreed with that.

**ECF No. 98-12** at 5-6. Notably, nothing was said or discussed in connection with any disciplinary

proceeding against plaintiff. Further down in José Vissepó-Muñoz's deposition, he testified

having examined the first report issued by Attorney López before plaintiff filed her internal

complaint. Once again, however, he failed to testify anything related to an ongoing disciplinary

proceeding or anything similar against plaintiff before she filed the internal complaint. *Id*., at 6-

10.

In light of all the above, a genuine dispute exists as to whether the protected activity

(internal complaint) was either the key factor or a trigger for the adverse employment action.

After all, an "issue is genuine if it may reasonably be resolved in favor of either party at trial." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006). In this Circuit, pretext can be found if "there are [] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in an employer's proffered reasons for termination that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Erazo-Vázquez v. State Indus. Products Corp.*, Civil No. 16-2709 (PAD), 2021 WL 3910248, at *14 (D.P.R. Aug. 31, 2021)(citing *Bonefont-Igaravidez v. International Shipping Corp.*, 659 F.3d 120, 124 (1st Cir. 2011)(internal quotation marks omitted).

In this case, based on the documents submitted by the parties, the deposition testimony available, and viewing the evidence in the light most favorable to the non-movant, the Court finds genuine issue exists as to whether Agustín Arellano relied on the reports to take the adverse action, or if it was just pretext. To be more specific, the Court finds that a reasonable jury could find that Agustín Arellano decided (*i.e.* his state of mind) to dismiss plaintiff after learning of the internal complaint she had filed against him. Thus, summary judgment dismissing plaintiff's retaliation claims is not proper.

### (iv) Plaintiff's claims under Equal Pay Act

The EPA prohibits discrimination based on sex where the employer pays wages "at a rate less than the rate at which he pays wages to employees of the opposite sex... for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d). Aerostar contends that

plaintiff failed to establish a *prima facie* case of EPA violations and thus moved for summary judgment. **ECF No. 77-1** at 24-25.

In response to Aerostar's motion for summary judgment, plaintiff asks the Court to deem María Román's claims against Aerostar at the EEOC to be "more than enough to create an issue of material fact on Aerostar's discriminatory pay practices." **ECF No. 129** at 14. Because María Román is not a plaintiff in this case and since her former job (Aerostar's Human Resources Director) is completely different from plaintiff's former job (manager), this first argument misses the mark by a wide margin and deserves no further consideration. Furthermore, as correctly stated by Aerostar, generally, an EPA plaintiff needs to show that the employer paid different wages to specific employees of the opposite sex for substantially equal work and jobs. *Ingram v. Brink's, Inc.*, 414 F.3d 222, 232 (1st Cir. 2005) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). Plaintiff clearly failed to do so.

Plaintiff second argument stands for the proposition that due to plaintiff's special position within the Commercial Department her wages cannot be compared with those of the other managers in her department, at least for purposes of summary judgment under EPA. **ECF No. 129** at 15. Based on all the evidence discussed before, the Court gives credit to this argument. According to the evidence submitted, plaintiff was not an ordinary "manager," even Agustín Arellano admitted as much during his deposition.

As particular examples of wage disparity, plaintiff points to former manager of Aerostar's Parking division, Mauricio Carmona Haua, who was paid approximately $7,140.00

more in annual salary than plaintiff. *Id*. And Felipe Cruz, a director with a salary higher than plaintiff's. *Id*., at 16. Without any specifics, plaintiff adds that all the male managers promoted to directors "received a five-figure raises in their base pay." *Id*., at 15.

Aerostar argues that precisely because plaintiff's position was special no other employee performed similar or comparable tasks. That alone, according to Aerostar, defeats plaintiff's EPA claims. **ECF No. 77-1** at 26. The Court, however, is more interested in Aerostar's second argument, which renders the issue behind plaintiff's *sui generis* position moot.[27] As a matter of fact, Aerostar is so confident in its compliance with EPA that it is willing, *in arguendo*, to ignore any difference between managers and directors for purposes of summary judgment analysis. **ECF No. 134** at 21. Once the dust settles, Aerostar adduces that the fact remains that "plaintiff's compensation was, at all times, substantially higher than **all** the other managers who worked at Aerostar, **which include five (5) male employees**, and that her compensation as of [the time of her dismissal] **was even higher than three (3) male directors** who worked at Aerostar at the time." **ECF No. 134** at 23; **ECF No. 134-2** (emphasis added). In her sur-reply, plaintiff failed to dispute any of these facts. **ECF No. 143** at 10.

Moreover, as to the specific examples of disparate compensation proffered by plaintiff, Aerostar explains that the case of Mauricio Carmona Haua is not comparable at all and, in any event, it was an isolated case. Indeed, even though Mauricio Carmona Haua did have a salary

---

[27] "The EPA is more concerned with substance than title, so [plaintiff] is free to bring EPA claims against male employees holding different positions than she held **if** she can establish that they performed comparable work." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 232 (1st Cir. 2005)(emphasis in the original).

higher than plaintiff, the evidence also shows that Mauricio Carmona Haua "ceased" his employment relationship with Aerostar on January 30, 2015, years before the relevant events underlying plaintiff's complaint. **ECF No. 134-2** at 8.

The only other example submitted by plaintiff (*i.e.* Felipe Cruz, a director with a salary higher than plaintiff's) is contradicted for EPA purposes by an undisputed fact: plaintiff's compensation as of the time of her employment's termination was higher than the salary of three male directors. In other words, the record shows that plaintiff was the highest paid manager and received a compensation higher than most of the male directors.

Plaintiff has no direct evidence in connection with her EPA claims. Regardless, the Court finds that plaintiff also fails to meet EPA's initial, burden-shifting scheme. EPA burden is a "more specialized paradigm" when compared to the traditional *Mcdonnell Douglas* burden-shifting framework. *Rathbun*, 361 F.3d at 72. Courts within this District have explained that meeting EPA's initial burden "is harder to make than the *prima facie* showing under the *McDonnell Douglas* framework… because it requires the plaintiff to identify specific employees of the opposite sex holding positions requiring equal skill, effort and responsibility under similar working positions who were more generously compensated." *Díaz-Figueroa v. Ricoh Puerto Rico, Inc.*, 661 F. Supp. 2d 140, 154 (D.P.R. 2009)(citing *Ingram*, 414 F.3d at 232). Certainly, here, plaintiff has not been able to identify those positions of equal skill, effort and responsibility under similar working conditions. Thus, plaintiff failed to meet its initial burden. But even if she did, the employer submitted ample evidence showing that her equal pay claims

are baseless. Plaintiff did not point to any other evidence to rebut or show otherwise, much less to show pretext. Thus, no genuine issue of material fact exists and summary judgment dismissing plaintiff's EPA claims is proper and hereby granted.

### (v) State law claims[28]

### (a) Laws 80, 69, 100, and 115

Law 80 holds employers liable for payment of an indemnity to employees hired for undefined term who are discharged without just cause. "Law 80 operates through" a burden-shifting regime pursuant to which "plaintiff has the initial burden of showing that the employer actually or constructively fired her, and of alleging that her firing was not justified." *Villeneuve v. Avon Products, Inc.*, 919 F.3d 40, 47 (1st Cir. 2019)(citing *Echevarría v. AstraZeneca Pharm. LP*, 856 F.3d 119, 140 (1st Cir. 2017); *Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d 17, 28 (1st Cir. 1998)). The burden then shifts to the employer to show just cause for the firing. *Id.* However, by showing "just cause" the employers punts back to plaintiff the burden of proof to rebut the employer's showing. *Id.*

---

[28] Among the plethora of arguments raised in their motion for summary judgment, defendants make reference to Puerto Rico Law 4 of January 26, 2017, which substantially amends Puerto Rico labor and employment laws. Although plaintiff (aside from an argument based on the reenactment doctrine) failed to address whether or not Law 4 is applicable in this case, the Court finds it necessary to clarify that, absent Puerto Rico caselaw providing otherwise, the Court will construe Law 4 according to its plain text. The statute states that "[e]mployees hired before the effective date of this act [January 26, 2017] shall continue to enjoy the same rights and benefits they enjoyed before, as expressly provided in the sections thereof." P.R. Laws Ann. tit. 29, § 121a. Therefore, just as it was recently determined by a sister Court in this District, the Court "will conduct [its] analysis of Law 80 and Law 100 [and other state laws affected by Law 4] under the burden[] frameworks as they existed prior" to the enactment of Law 4. *Vázquez-Santiago v. Edwards Lifesciences Tech. Sarl, LLC*, 19-1089 (SCC), 2021 WL 3518808, at *5 (D.P.R. Aug. 10, 2021).

Here, plaintiff met her initial burden by showing that she was fired and by alleging discrimination based on her sex. **ECF No. 1**. The Court must then evaluate whether defendants meet their burden of showing just cause by a preponderance of the evidence. At this stage, defendant "need only demonstrate that it had a reasonable basis to believe that an employee has engaged in one of those actions that the law identifies as establishing such cause." *Pérez v. Horizon Lines, Inc.*, 804 F.3d 1, 9 (1st Cir. 2015). That is, "the employer's reasoned deliberation." *Id*. The First Circuit held that "just" is "one where an employer provides a considered, non-arbitrary reason for an employee's termination that bears some relationship to the business' operation." *Id*.

Even if the Court were to find that defendants met their burden, as discussed for purposes of the Title VII discrimination and retaliation claims, plaintiff has direct evidence which creates genuine dispute as to whether the non-discriminating reason was the justification for the adverse employment action or if it was illegal discrimination. Under Puerto Rico Supreme Court precedent, not all unjustified terminations are necessarily discriminatory, but all discriminatory terminations are unjustified. *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. 364, 387 (2001). Based on that holding, the First Circuit has reasoned "a finding of [sex] discrimination in this case would necessarily make [plaintiff]'s termination unjustified under Law 80." *Zampierollo-Rheinfeldt*, 999 F.3d at 59-60. Accordingly, "[b]ecause… there are genuine issues of material facts that must be resolved at trial regarding whether [defendant] terminated

[plaintiff] because of h[er] [sex]" Aerostar's motion for summary judgment requesting dismissal of plaintiff's claims under Law 80 must also be denied. *Id*.

For the same reasons, the Court denies defendants' request for summary disposition of plaintiff's claims under Laws 69, 100, 115. *See Ríos v. Municipality of Guaynabo*, 938 F. Supp. 2d 235, 258 (D.P.R. 2013)("the Court would deny the defendants' request for summary judgment on [plaintiff]'s Law… 69, and 100 claims, precisely for the same reasons that the Court denied the defendant's summary judgment on [plaintiff]'s Title VII [] claim.").

### (b) Law 17

The Court has been flexible in considering the evidence in the light most favorable to plaintiff, but it draws the line at plaintiff's claims under Law 17. Plaintiff mentions Law 17 in a perfunctory manner in her complaint, **ECF No. 1** at 11, and again, in passing, in her response to defendant's motions for summary judgment. **ECF No. 128** at 22-23. Yet, plaintiff fails to include any discussion supporting her claims under Law 17.

Law 17 "declares as the public policy of the Commonwealth of Puerto Rico that sexual harassment in employment… constitutes an illegal and undesirable practice that goes against the established constitutional principle[s][,]" therefore since 1988, "the intention of [the] Legislature [was] to prohibit sexual harassment in employment, to impose responsibilities and fix penalties." PR Laws Ann. tit. 19 § 155. The Court has not found any factual allegations in support of plaintiff's cause of action under Law 17.

Conversely, as explained before, although plaintiff's internal complaint did include the words "sexual harassment," plaintiff, through counsel, "later clarified that when she used the phrase 'sexual harassment' she meant harassment due to her sex… Plaintiff clarified that any misunderstanding could have been due to the fact that she is not an attorney." **ECF No. 128** at 42; **ECF No. 92-1** at 241. Evidently, there is a glaring contradiction within plaintiff's rhetoric and arguments developed by counsel. Plaintiff, either claims that she suffered sexual harassment, or that she did not. Under Fed. R. Civ. P. 11(b), attorneys have an obligation to "make a reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay." *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

Because all the evidence before the Court points to the fact that plaintiff was not subjected to sexual harassment,[29] and there not being any genuine issue as to this material fact, plaintiff's claims under Law 17 are summarily dismissed.

### (c) Tort claims

Defendants attack plaintiff's tort claims on one ground. Defendants contend that the relief afforded by the employment laws preclude plaintiff from seeking relief under Puerto Rico's general tort statute. *See* **ECF No. 77-1** at 36-37; **ECF No. 80** at 9. Plaintiff counter by sustaining that the caselaw relied upon by the individual co-defendant, *Santiago Nieves v. Braulio Agosto*

---

[29] "Its harassment because of my sex, because I am a woman, and that is what I have tried to explain to everyone." **ECF No. 92-1** at 242.

*Motors*, 197 D.P.R. 369, 378-379 (2017), "cuts against [defendants]." **ECF No. 129 at 23**. However, the Puerto Rico Supreme Court Opinion cited and discussed by plaintiff (as a matter of fact it is the **only** caselaw in support of their opposition to summary judgment of their tort claims) is in the Spanish language. The Court grants the parties 20 days to submit either a certified English translation or a stipulated translation of *Santiago Nieves v. Braulio Agosto Motors*, 197 D.P.R. 369 (2017). Loc. R. Civ. 5; *see also Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008). The Court expects both parties to proceed with good faith in this joint task.

Accordingly, defendants' motion for summary judgment requesting dismissal of plaintiff's tort claims is **DENIED WITHOUT PREJUDICE** to its reassertion after certified or stipulated English translation is submitted.

### B.    Individual defendants' motion for summary judgment

Agustín Arellano and María Román, in their individual capacities, moved for joinder on Aerostar's motion for summary judgment, memorandum in support, and SUMF. **ECF No. 80**. They also filed a motion for partial summary judgment seeking dismissal of all claims against them as individuals. **ECF Nos. 80, 80-1, 80-2**.

### (i) EPA and Law 17

As previously discussed in this Opinion and Order, plaintiff's EPA and Law 17 claims are dismissed.

### (ii) Title VII

Agustín Arellano and María Román argue that Title VII claims against them should be dismissed because Title VII does not create liability against individual employees. **ECF No. 80-2** at 3. Instead of addressing this argument or moving for dismissal, plaintiff simply avoided the subject. **ECF No. 129** at 21-23. However, "[a]fter reviewing the analysis fashioned by all of our sister circuits, [the First Circuit was] persuaded… and therefore… determine[d] as [sister courts] have that there is no individual employee liability under Title VII." *Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009).

Plaintiff's Title VII against Agustín Arellano and María Román are dismissed.

### (iii) Law 80

Agustín Arellano and María Román also moved for summary judgment to dismiss plaintiff's claims against them as individuals under Law 80. **ECF No. 80-2** at 3. Again, plaintiff failed to address co-defendants' argument nor moved for voluntary dismissal. **ECF No. 129** at 21-23; **ECF No. 143-1** at 12.

"This district has consistently rejected individual liability claims for wrongful termination under Law 80." *Santiago v. WHM Carib, LLC*, 126 F. Supp. 3d 211, 216 (D.P.R. 2015)(citing *Flamand v. Am. Int'l Grp., Inc.*, 876 F.Supp. 356, 364–65 (D.P.R. 1994); *Mandavilli v. Maldonado,* 38 F.Supp. 2d 180, 205 (D.P.R. 1999); *Vargas v. Fuller Brush Co. of Puerto Rico*, 336 F.Supp. 2d 134, 141 (D.P.R. 2004); *Rivera–Almodovar v. Instituto Socioeconómico Comunitario, Inc.*, 806 F.Supp. 2d 503, 509 (D.P.R. 2011)). "[A] supervisor is not an employer for purposes of

Law 80." *Lorenzo v. Perfect Cleaning Services, Inc.*, Civil No. 15-1301 (JAG), 2016 WL 11681301, at *6 (D.P.R. Dec. 21, 2016).

Plaintiff's Law 80 claims against Agustín Arellano and María Román in their individual capacities are dismissed.

### (iv) Law 115

Agustín Arellano and María Román also moved for summary judgment dismissing plaintiff claims under Law 115. **ECF No. 80-2** at 4-6. They contend that recent precedent from the Puerto Rico Supreme Court, *Santiago Nieves*, 197 D.P.R. at 369, which is also the focal point of the tort claims, precludes plaintiff from asserting claims under Law 115 against them in their individual capacity. Once more, plaintiff failed to address co-defendants' arguments. **ECF No. 129** at 21-23.

As noted and ordered in the section of this Opinion and Order addressing defendants' request for summary judgment against plaintiff's tort claims, the alleged on-point precedent from the Puerto Rico Supreme Court, in *Santiago Nieves*, is not available in the English language. The Court, as discussed before, granted the parties a window of time to either stipulate and submit an English translation or to submit a certified translation of said Opinion pursuant to Loc. Civ. R. 5. For purposes of consistency and fairness, Agustín Arellano and María Román's request for summary judgment dismissing plaintiff's claims under Law 115 is **DENIED WITHOUT PREJUDICE** to its reassertion once a certified or stipulated translation is submitted.

**(iv) Law 69, 100**

For the reasons stated previously in this Opinion and Order, Agustín Arellano and María Román's motion for summary judgment is denied as to plaintiff's claims under Laws 69 and 100.

## VI.   CONCLUSION

In light of all the above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Aerostar's motion for summary judgment at **ECF No. 77**. Likewise, the Court hereby **GRANTS IN PART AND DENIES IN PART** Agustín Arellano and María Román's motion for summary judgment at **ECF No. 80**.

Accordingly, the Court Orders the following:

i. Aerostar's and individual co-defendants, Agustín Arellano and María Román's motions for summary judgment **ECF Nos. 77, 80**, requesting dismissal of plaintiff claims under EPA and Law 17 are **Granted**. Accordingly, plaintiff's claims under EPA and Law 17 are **DISMISSED**.

ii. Individual co-defendants Agustín Arellano and María Román's motion for summary judgment, **ECF No. 80**, requesting dismissal of plaintiff's claims under Title VII and Law 80 against them in their individual capacities is Granted. Accordingly, plaintiff's claims against Individual co-defendants Agustín Arellano and María Román in their individual capacities under Title VII and Law 80 are **DISMISSED**.

iii. Aerostar's and individual co-defendants Agustín Arellano and María Román's motions for summary judgment requesting dismissal of plaintiff's tort claims under Puerto Rico Law are **DENIED WITHOUT PREJUDICE**. Aerostar and individual co-defendants Agustín Arellano and María Román may reassert their request for summary judgment against those claims once the necessary English translations are submitted within the timeline and delimitations stablished herein below.

iv. Individual co-defendants Agustín Arellano and María Román's motion for summary judgment requesting dismissal of plaintiff's claims under to Law 115 is **DENIED WITHOUT PREJUDICE.** Individual co-defendants Agustín Arellano and María Román may reassert their request for summary judgment against those claims once the necessary English translations are submitted within the timeline and delimitations stablished herein below.

v. The Court grants the parties 20 days to submit either a certified English translation or a stipulated translation of *Santiago Nieves v. Braulio Agosto Motors*, 197 D.P.R. 369 (2017). Loc. R. Civ. 5; *see also Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008).

vi. The motions to strike at **ECF No. 87, 144** are **DENIED**. The motions submitting certified translations and audio at **ECF Nos. 92, 98, 136, 151 are NOTED**. The motions to restrict at **ECF Nos. 126, 138, 142 are GRANTED**. The motions for leave to reply and sur-reply at **ECF**

**Nos. 130, 132, 141 are MOOT**. All pending motions for extension of time to file certified translations are **MOOT.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of May, 2022.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**
